ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SEQUOIA CAPITAL INVESTMENTS, LLC by and through ROBERT S. GREISMAN LLC and ADRIANA M. GREISMAN on behalf of ZIP CAT INVESTMENTS, LLC Partners Other Than the Tax Matters Partner,

Plaintiffs,

v.

UNITED STATES OF AMERICA, By and through its agent, the Internal Revenue Service,

Defendant.

FILED
MAY 24 2006
U.S. COURT OF FEDERAL CLAIMS

NO. 06-421T

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE SECTION 6226[1]**

1. This is a federal income tax partnership proceeding brought under Appendix F of the Rules of the United States Court of Federal Claims and § 6226(a) of the Internal Revenue Code of 1986, as amended, 26 U.S.C. ("Code"), to contest the Internal Revenue Service ("IRS") findings in the Notice of Final Partnership Administrative Adjustment ("FPAA") dated December 30, 2005. The FPAA was issued by the Internal Revenue Service, 230 S. Dearborn, Stop 4031, Chicago, IL 60604. The adjustments relate to the partnership year ended December 31, 2000 of Sequoia Capital Investments, LLC ("Sequoia"). A copy of the FPAA issued to a notice partner of Sequoia, Zip Cat Investments, LLC, is attached as Exhibit "A" and incorporated herein by reference.

**Statement of the Claim**

[1] All references to "Code" relate to the Internal Revenue Code of 1986 as amended through December 31, 2000 (26 U.S.C.).

2. Plaintiffs seek a determination that (i) the adjustments made by the FPAA relating to the partners' outside bases in their Sequoia partnership interests are barred by the statute of limitations; (ii) even if the outside bases are partnership items that could be adjusted in the FPAA within the period of limitations, those adjustments are contrary to law and should be readjusted; (iii) all other adjustments made by the FPAA are contrary to law and should be readjusted; and (iv) at the conclusion of this proceeding, the deposit of $462,000 should be returned or refunded to Plaintiffs with interest as provided by law.

**The Parties**

3. Sequoia is a partnership organized under the laws of the State of Delaware. Sequoia's address and principal place of business is 68 Carman Avenue, Cedarhurst, New York 11516. Sequoia's taxpayer identification number is 36-4332246 and its United States Partnership return (Form 1065) for the taxable year ended December 31, 2000 ("Partnership return") was filed with the Internal Revenue Service Center in Ogden, UT.

4. The tax matters partner of Sequoia is Sentinel Advisors, LLC. Its address is 68 Carman Avenue, Cedarhurst, New York 11516.

5. The tax matters partner has not filed a complaint for readjustment of partnership items within the period specified in Code Section 6226(a).

6. Zip Cat Investments, LLC ("Zip Cat") is a member and a notice partner of Sequoia. The employer identification number of Zip Cat is 36-4332246.

7. Zip Cat is a limited liability company organized under the laws of the state of Delaware, but is disregarded for certain federal income tax purposes pursuant to Treas. Reg. §

1.7701-3(1)(ii). The principal place of business and mailing address of Zip Cat is 904 Fountain, Deerfield, Illinois 60015.

8. Zip Cat has an interest in the outcome of this action because its partnership items have not become non-partnership items, within the period of limitations, by reason of one or more of the events described in Code § 6231(b).

9. Robert S. Greisman ("Mr. Greisman") is an individual who is the sole member of Zip Cat. Mr. Greisman's social security number is 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. Mr. Greisman is an indirect partner of Zip Cat, pursuant to Code § 6231(a)(10). His mailing address is 904 Fountain, Deerfield, Illinois 60015. Adriana M. Greisman was married to and filed a joint federal income tax return with Mr. Greisman in 2000 and is also treated as an indirect partner of Sequoia pursuant to Code § 6231(a)(2).

10. The Defendant is the United States of America with respect to the claims and actions by its agent, the IRS, an executive agency within the Department of Treasury. Service of process may be made on Defendant through the Attorney General at the Tax Division of the Department of Justice and upon such other offices or individuals as may be required.

**Deposit**

11. On or about October 14, 2005, Mr. and Mrs. Greisman deposited $462,000 with the IRS at the IRS Service Center in Kansas City, MO 64999-0102 directed to the year 2000. In accordance with Code § 6226(e), the deposit includes the amount by which Mr. and Mrs. Greisman's tax liability would be increased under the adjustments asserted in the FPAA.

**Jurisdiction**

12. This Court has jurisdiction over this claim, pursuant to 28 U.S. C. § 1508 and 26 U.S.C. § 6226(b).

**Assignments of Error**

13. All the adjustments set forth in the FPAA are in dispute and, in issuing the FPAA, the IRS made the following errors:

a. In asserting that Sequoia's partners' outside bases in their partnership interests are $0, rather than $11,261,061, as reported;

b. In asserting that the Beginning Capital Account (SCH. M-2, Line 1) was $0 rather than $204,549, as reported;

c. In asserting that the Capital Contributions (SCH. M-2, Line 2) was $0 rather than $872, as reported;

d. In asserting that the Other Portfolio Loss was $0 rather than ($124,794), as reported;

e. In asserting that the Other Deductions (SCH. K, Line 11) was $0 rather than $19,197, as reported;

f. In asserting that the Distributions Other Than Money from Sequoia to its partners in 2000 was $0, rather than $54,796, as reported;

g. In asserting that Sequoia did not exist as a partnership as a matter of fact;

h. In asserting that, even if Sequoia existed as a partnership as a matter of fact, that the partnership and the transactions it engaged in should be disregarded, including the formation of Sequoia, the acquisition of any interest in Sequoia by its partners, the purchase and sale of options, the transfer of options to the partnership in return for a partnership interest, the purchase of EUROs or other assets by the partnership, and the distribution of those assets to the

partners in complete liquidation of their partnership interests, and the subsequent sale of those assets to generate a loss when sold, and any losses resulting from those transactions disregarded, because, allegedly, those transactions

(i) Had no business purpose other than tax avoidance;

(ii) Lacked economic substance, and;

(iii) In fact and substance, constituted an economic sham for federal income tax purposes;

i. In asserting that Sequoia was a sham, lacked economic substance or, under Treas. Reg. §1.701-2, was formed or availed of in connection with a transaction or transactions in taxable year 2000, a principal purpose of which was to reduce substantially the present value of the partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code; and consequently determining that

(i) Sequoia is disregarded and that all partnership transactions are treated as engaged in directly by its partners, including but not limited to the determination that the acquisition of assets, including foreign currency options, were acquired directly by the partners of Sequoia;

(ii) The foreign currency options contributed to or assumed by Sequoia are treated as never having been contributed to or assumed by that

partnership and any gains or losses purportedly realized by Sequoia should be treated as realized by its partners;

(iii) The partners of Sequoia should be treated as not being partners in Sequoia; and

(iv) Contributions to Sequoia should be adjusted "to reflect clearly the partnership's or partners' income" - at some unspecified time and in some unspecified way;

j. In promulgating and applying Treas. Reg. § 1.701-2:

(i) In violation of the Separation of Powers Doctrine by attempting, as an executive agency, to reverse longstanding and recent judicial precedent; also

(ii) In violation of the Separation of Powers Doctrine by attempting at various points, as an executive agency, to repeal, contract, expand, alter, modify, and exceed the plain meaning of statutes enacted by Congress;

(iii) In substituting pejoratives and self-serving labels for the results permitted by law, simply because those results and that law do not favor the IRS in this particular case;

k. In asserting that the contingent obligations under the foreign currency call options written by the partners of Sequoia and subsequently assumed by Sequoia constitute liabilities within the meaning of Code §1.752-6, and, as a

result, reduce the outside bases of the partners in Sequoia (but not below fair market value);

(i) In attempting to retroactively reverse the partnership liability rules – more than three years after Sequoia filed its United States Partnership return;

(ii) In specifically violating the Separation of Powers doctrine by reversing judicial precedent that the IRS itself successfully established in *Deputy v. DuPont*, 308 U.S. 488, 497 (1940) (obligation to deliver property in order to close out a short sale is not an "indebtedness") and *Helmer v. Commissioner,* T.C. Memo 1975-160, 34 T.C.M. 727 (1975) (a contingent obligation to deliver an asset in the future under a sold/written option does not constitute a partnership liability);

l. In asserting that neither Sequoia nor its partners entered into or acquired options or foreign currency or stock with a profit motive for purposes of Code § 165(c)(2) and in (apparently) asserting that Sequoia is an individual subject to the limitation on deductibility contained in Code § 165(c), thus treating items as partnership items that are not partnership items;

m. In further asserting that, even if the foreign currency options were treated as contributed to Sequoia, the bases of the options should be reduced, both in the hands of the contributing partners and the partnership, by any amount

received by the partners from the contemporaneous sale of a substantially similar option to the same counter-party;

n. In attempting to do indirectly what the law prohibits Defendant from doing directly – to wit, reducing the basis in a purchased option by the amounts received from selling a different option;

o. In asserting that the adjusted basis of the long call options and other contributions to Sequoia by its partners have not been established under Code § 723, and consequently determining that the adjusted basis of each partner's partnership interest is $0;

p. In asserting that, in the case of a sale, exchange, or liquidation of the partners' partnership interests in Sequoia, neither Sequoia nor its partners have established that the bases of the partners' partnership interests were greater than zero for purposes of determining gain or loss from such transaction or the carryover basis of assets distributed from Sequoia to its partners;

q. In asserting that the losses deducted by the partners of Sequoia should be disallowed because the partners have not established that any amounts are considered to be at risk under § 465, thus violating § 6221 and 6231(a)(3) by injecting non-partnership items into this partnership proceeding;

r. In asserting that a call option purchased by partners of Sequoia should be integrated with call options purchased by AIG International ("AIG") and treated as one financial transaction pursuant to Treas. Reg. § 1.988-2(f) and, accordingly, the basis of the purchased call option should be limited to the net

of any premium paid for the purchased option over that received from the sold option;

s. In asserting that the adjustments of partnership items of Sequoia are attributable to a tax shelter for which there was not substantial authority for the positions taken on the Partnership return, and that Sequoia and its partners did not reasonably believe that the tax treatment of those partnership items as stated on the return was more likely than not correct;

t. In asserting that there was no showing by the partnership or any of its partners that there was reasonable cause for any underpayments, that the partnership and its partners did not act in good faith, and that no exceptions to the penalties apply, and, therefore, the accuracy-related penalty under § 6662(a) applies to all underpayments of tax attributable to adjustments of partnership items of Sequoia as follows:

   i. In asserting that a 40% penalty attributable to a gross valuation misstatement applies under Code §§ 6662(a), 6662(b)(3), 6662(e), and 6662(h);

   ii. In asserting alternatively that the 20% penalty attributable to negligence or disregard of rules and regulations provided by Code §§ 6662(a), 6662(b)(1), and 6662(c) applies at all, much less in addition to other penalties;

iii. In asserting alternatively that the 20% penalty attributable to a substantial understatement of income tax applies under Code §§ 6662(a), 6662(b)(2), and 6662(d);

iv. In asserting that the 20% penalty for a substantial valuation misstatement applies under Code §§ 6662(a), 6662(b)(3), and 6662(e);

w. In asserting any penalty against Sequoia and its partners, whose return positions, in contrast to those currently urged by the IRS, are based upon:

(i) The well reasoned application;

(ii) Of statutory, regulatory, and judicial authorities;

(iii) That were valid for the partnership year 2000 and are valid now.

9. The facts and mixed matters of fact and law on which Plaintiffs rely are as follows:

a. Zip Cat Investments, LLC is a single member LLC formed under Delaware law for non-tax purposes, to limit the potential liability of Mr. Greisman and insulate him from credit risks inherent in the investment and trading of currency options. Zip Cat Investments is disregarded for federal income tax purposes.

b. Sequoia is a general partnership formed under Delaware law formed for the purpose of pooling the investments of its partners and continuing the investments of currency options, stock and other property in a more efficient and diversified manner than could be done by the partners individually.

c. Each partner of Sequoia determined it should take advantage of the opportunity to invest in options with a measured risk of loss but an opportunity of significant gains and subsequently decided to contribute them to Sequoia for, *inter alia,* the investment purposes outlined above.

d. In 1999, Zip Cat purchased a European style call option on the Euro from AIG at a cost of $2,000,031 as stated in the purchased option confirmation from AIG. The cost of an option is customarily referred to as its premium.

e. Some, but not all, of the other partners of Sequoia purchased options from AIG. The cost of each option was the premium amount stated in each partner's purchased option confirmation from AIG.

f. The general rule, as stated by Code § 1012, "[t]he basis of property shall be the cost of such property," applies to determine the cost of the options in the hands of the partners of Sequoia.

g. On December 23, 1999, Zip Cat contributed the option it had purchased from AIG to Sequoia, along with cash, in exchange for a membership interest in Sequoia.

h. Also in 1999, other partners also contributed the options they had purchased from AIG, along with cash, to Sequoia in exchange for membership interests in Sequoia.

i. Under Code § 722, "[t]he basis of an interest in a partnership acquired by a contribution of property, including money to the partnership shall be the amount of such money and the adjusted basis of such property to the

contributing partner at the time of the contribution . . . ." A partner's basis in its partnership interest is sometimes referred to as "outside basis." Collectively, partners' bases in their partnership interests are referred to as "outside bases."

j. Any adjustment to Zip Cat's outside basis should have been made in 1999, the year Zip Cat purchased the option and contributed the purchased option to the partnership and adjustments to Zip Cat's outside basis in Sequoia are now barred by the statute of limitations.

k. Also in 1999, Zip Cat sold a European style call option on the Euro to AIG and received a premium of $1,980,028, as stated in the sold option confirmation from AIG.

l. Some, but not all, of the other partners of Sequoia sold options to AIG for premium amounts stated in each respective partner's sold option confirmation from AIG.

m. Of those partners who purchased options from AIG and sold options to AIG, most, if not all, of the partners executed the purchases and sales in 1999.

n. The option each partner purchased was separate and distinct from the option each partner wrote or sold to AIG, and there is no basis in fact or law to ignore the separate terms or separate investment potentials of each option, including the possibility of restriking one position without altering the other position or the possibility of legging in and legging out of one position.

o. The options sold to AIG were contingent obligations.

p. On December 23, 1999, Sequoia assumed the contingent obligations under the option that was sold by Zip Cat to AIG.

q. Likewise in 1999, Sequoia assumed the contingent obligations under options partners other than Zip Cat sold to AIG.

r. It was not known and could not reasonably have been known whether or not the writer of the options would ever be called on to deliver under the option's terms.

s. The assumption agreements entered into between the partners and Sequoia was not a novation and release of the partners.

t. Zip Cat had significant non-tax profit objectives in entering into the options transactions with AIG and investing in Sequoia.

u. Partners of Sequoia, other than Zip Cat, also had significant non-tax profit objectives in entering into options transactions with AIG and investing in Sequoia.

v. Neither Sentinel Advisors nor Banque Safra, which was a nominee for Brazilian investors, had any tax motives in investing in Sequoia.

w. The investment in options with AIG offered the opportunity for investment returns of at least 100% of the net cash invested (200% including return of capital) with limited downside risk. The possibility of striking and restriking those options offered unlimited upside potential.

x. The investment in Sequoia offered the possibility of making investment returns of as much as 38:1 on knock out options.

y. Sequoia is a limited liability company for state law purposes and is treated as a partnership for federal tax purposes.

z. Sequoia was at all relevant times "a syndicate, group, *pool*, *joint venture* or *other unincorporated organization* [other than a trust or estate] through or by means of which ANY business, *financial operation*, OR *venture* is carried on." Code §§ 761 and 7701 (emphasis added).

aa. The sole statutory exclusion from the partnership taxation provisions (Code §§ 701-761) is:

(i) Set forth in Code § 761(a); and

(ii) Requires the unanimous election by all partners to exclude certain specified types of partnerships from those provisions pursuant to Treasury Regulations.

bb. At no time did Sequoia or any member of Sequoia elect under Code § 761(a) to exclude such organization from the application of all or part of the partnership taxation provisions in Subchapter K of the Code.

cc. As a consequence, the IRS was never notified of an election by all the partners of Sequoia or Sequoia itself to be excluded from any of the partnership taxation provisions in Subchapter K. Instead, Sequoia filed a United States Partnership return (Form 1065).

dd. At all relevant times, Sequoia was governed by its partnership agreement.

ee. Sequoia served a number of functions completely unrelated to taxes. Those included among others: Sequoia existed and operated in its own name – separate and distinct from its partners, and entered into binding, enforceable contracts with third-parties in its own name.

n. In addition to dealing with unrelated third-parties as a separate and distinct entity, Sequoia filed its own United States Partnership return (Form 1065) for 2000 with the IRS on or about April 15, 2001.

o. The IRS selected that partnership return for a partnership audit and issued a "Notice of Beginning of Administrative Proceeding ("NBAP")" under the Uniform Partnership Procedures set forth in Code § 6221, *et seq.*

p. After conducting a short audit, the IRS issued Sequoia an FPAA which was dated December 30, 2005.

r. The FPAA contains 10 grounds for its substantive tax adjustments, in addition to a series of alternative contentions relating to penalties under Code § 6662.

s. At least two of the grounds stated in the FPAA issued to Sequoia turn upon Treas. Reg. § 1.701-2.

t. Treas. Reg. § 1.701-2 is the most criticized tax regulation issued within the past 20 years, if not beyond.

u. As it was being proposed and adopted, Treas. Reg. § 1.701-2 was criticized by many of the leading partners of the federal tax bar – including the ABA Tax Section, former United States Tax Court Judges, former Commissioners

of the IRS, former Chief Counsels of the IRS, and one of the leading authorities in the nation on partnership taxation.

v. As those respected partners of the federal tax bar told the IRS, Treas. Reg. § 1.701-2 is an unconstitutionally vague violation of the Separation of Powers Doctrine that breaches every known standard for an interpretative regulation..

w. Moreover, Sequoia would be respected as a partnership even if Treas. Reg. § 1.701-2 were valid. *See, e.g.*, Treas. Reg. § 1.701-2(d), Ex. 3 and 4.

x. The first ground also injects the unsubstantiated allegation that Sequoia did not exist as a matter of fact, as an excuse to disregard Sequoia as a partnership for federal tax purposes.

y. That contention defies the plain meaning of Code §§ 761 and 7701 where Congress defines - in the most expansive terms - precisely which unincorporated organizations are treated as partnerships and which are not.

z. The second and third contentions also defy the judicial precedent established by Defendant that legally constituted partnerships falling within the expansive definition in Code §§ 761 and 7701 must be recognized even where they were formed primarily for tax-avoidance purposes and certainly must be recognized where they serve ANY non-tax purpose.

aa. The fourth ground stated in the FPAA consists of an attempt by the IRS to reverse retroactively the very point of law it successfully urged upon the Supreme Court in *Deputy*, 308 U.S. at 497 and upon the United States Tax Court in *Helmer*, 34 T.C.M. 727 (1975) -- the point of law the IRS recently

recognized controlled at the time Sequoia and its partners consummated and reported their transactions. In this contention, the IRS urges that a grantor's contingent obligation under a written option somehow constitutes a liability.[2] *Deputy, Helmer,* and a long line of cases all recognize that a written option does not constitute a "liability" for federal income tax purposes such as Code § 752.

ab. The fifth ground stated in the FPAA relies on a statute – Code § 165(c) – that is captioned "Limitation on Losses of Individuals," despite the fact that this is an *entity level* proceeding under the Uniform Partnership Procedures set forth in Code § 6221, *et seq*. Notwithstanding the FPAA's invocation of Code § 165(c), a wholly-inapplicable, individual-specific statute, Sequoia did in fact enter into all of its trades - be they equity, derivative positions, or others. – with the clear objective of making a profit.

ad. The sixth and seventh grounds recited in the FPAA, like the previous ones, seek to override statutes enacted by Congress. Specifically, the IRS seeks somehow to reduce the basis in a purchased option by the amount received from a separate sold option - with no apparent authority and in direct contravention of established authority, including Code §§ 722 and 723.

---

[2] Notably, the IRS FPAA does not rely upon the regulation - Temp. Treas. Reg. § 1.752-6T - that the IRS recently proposed in aid of this and related litigation, presumably because such abuse of the rulemaking process would invalidate that sort of litigation tactic. *See, e.g., Chock Full O'Nuts Corp v. United States*, 453 F.2d 300, 303 (2nd Cir. 1971). It is, however, helpful in the sense that the IRS itself acknowledges in the regulation that *Helmer* was good law when these transactions were consummated. Beyond that, the regulation lacks statutory authority, improperly seeks to rewrite the law four years after the fact, and does not apply to these facts.

ae. The eighth ground recited in the FPAA is repetitious and again asserts that Sequoia and its partners have not established bases in their partnership interests, in spite of the fact that, at a minimum the basis of each partner in its partnership interest consists of the amount each partner paid for the call option(s) it purchased, without reduction for any premium received by that partner upon the separate sale of an option – all as recognized by *Helmer* and reaffirmed in *Salina P'Ship LP v. Commissioner*, T.C. Memo 2000-352.

af. The ninth ground relies on a non-partnership item, § 465 as the basis for disallowance, contrary to the authority of *Roberts v. Commissioner*, 94 T.C. 853 (1990) and *Hambrose Leasing 1984-5 Ltd. Partnership v. Commissioner*, 99 T.C. 298 (1992).

ag. The tenth ground relies on Treas. Reg. § 1.988-2(f) that is limited to recharacterizing transactions for purposes of "timing, source, and character of gains or losses" and does not permit Defendant's recharacterizations contained in the FPAA.

ah. The eleventh ground concerns the applicability of accuracy-related penalties. Like many of the IRS's assertions, the simultaneous contentions in the FPAA that no partnership exists and yet penalties apply based on partnership activity, are internally inconsistent.

ai. Sequoia filed its 2000 return in good faith with due and reasonable regard for the income tax rules and regulations. The actions undertaken by Sequoia and its partners meet and exceed the ordinary care protected by Code §§ 6662 and

6664 in complying with the income tax rules and regulations. Neither Sequoia nor its partners were negligent; nor did either act with intentional disregard of the rules or regulations under Code § 6662.

During the spring and summer of 2000, the partners received Schedules K-1 from Sequoia reporting the results of the partnership trading activities, as well as distributions. The Sequoia Partnership return and Schedules K-1 were prepared by a qualified CPA with knowledge of the facts. Sequoia and its partners relied on the expertise of the Partnership return preparer and other advisors in preparing the Partnership return.

aj. Neither the value nor the adjusted basis of any property claimed on Sequoia's 2000 federal income tax return was 400% or more of the correct amount, nor was a price paid for any property or services (or for the use of property) claimed on the return in connection with any transaction between persons described in Code § 482, 400 % or more (or 25% or less) of the amount determined under Code § 482 to be the correct amount of such price. All transactions reflected on the returns were reported at amounts based on trading transactions with unrelated parties. No amounts on the returns were determined by valuation. Even if the adjusted basis met the numerical standards, the penalty does not apply here. Thus, the 40% gross valuation misstatement penalty contemplated by Code § 6662(h) is not applicable to Sequoia or its partners.

ak. Neither the value nor the adjusted basis of any property claimed on Sequoia's 2000 federal income tax return was 200% or more of the correct amount, nor was a price paid for any property or services (or for the use of property) claimed on the return in connection with any transaction between persons described in Code § 482, 200% or more (or 50% or less) of the amount determined under Code § 482 to be the correct amount of such price. Even if the adjusted basis met the numerical standards, the penalty does not apply here. Thus, the 20% valuation misstatement penalty is not applicable to Sequoia or its partners.

al. Sequoia had no substantial understatement of its income tax. Moreover, Sequoia and any transactions at issue are not tax shelters as defined by the Code. Code § 6662(d)(2)(C). Even if a substantial understatement of income tax were ultimately determined to be due, there was substantial authority for the treatment of all items on the 2000 return of Sequoia and each member had a reasonable basis for believing that the tax treatment of such item was more likely than not the proper treatment. Furthermore, all items were disclosed on the appropriate return and there was a reasonable basis for the tax treatment of each item.

am. In all events, no penalty can or should be applied against Sequoia, as an entity or against its partners, since all concerned proceeded in good faith based upon reasonable cause within the meaning of Code § 6664(c).

an. Accuracy related penalties under Code § 6662 apply only to an underpayment of tax required to be shown on a return. No tax was required to be shown on the Partnership return for Sequoia. Accordingly, no penalties are determinable in this proceeding. Even if an underpayment were determined to be due, there was reasonable cause for such underpayment and Sequoia, through its partners, acted in good faith. Hence, no penalty is due with respect to such underpayment pursuant to Code § 6664(c). Furthermore, the FPAA is deficient with respect to the asserted penalties for failure to describe any factual basis for asserting them.

ao. Defendant bears the burden of proof as to the penalties, as well as the substantive partnership items.

WHEREFORE, Plaintiffs pray that after due proceedings are had, it be redetermined that there are no adjustments with respect to Sequoia's partnership items as reported on its Partnership return and no penalties related to partnership items, and further prays for such other relief as is appropriate.

David D. Aughtry
DAVID D. AUGHTRY
Georgia Bar No. 028010
Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E., Ninth Floor
Atlanta, Georgia 30303
Telephone: 404-659-1410
Facsimile: 404-659-1852

LINDA S. PAINE
Texas Bar No: 15414000
Chamberlain, Hrdlicka, White,
Williams & Martin
1200 Smith Street, Ste. 1400
Houston, Texas 77002
Telephone: (713) 658-1818
Facsimile: (713) 658-2553

COUNSEL FOR PLAINTIFFS

May 24, 2006

0567342.06
003795-000000:5/15/2006

**Notice 2000-44 Case**

**Internal Revenue Service**
230 S. Dearborn Stop 4031 CHI
Attn: Brenda Williams
Chicago, IL. 60604

**Department of the Treasury**

Refer To: Brenda Williams

Partner Identifying Number: 36-4332246

Name of Partnership: SEQUOIA CAPITAL INVESTMENTS LLC

Partnership Identifying Number: 13-4091017

Tax Year Ended: December 31, 2000

Date FPAA Mailed to the Tax Matters Partner:
DEC 30 2005

Person to Contact: Brenda Williams
Employee Number: 36-08840

Contact Telephone Number: 312-566-2449
(not a toll free number)

Contact Hours: 8:00 AM to 4:30 PM

Date: DEC 30 2005

ZIP CAT INVESTMENTS, LLC
ATTN: BOB GREISMAN
BDO SEIDMAN, LLP 233 N. MICHIGAN AVE
CHICAGO, IL. 60601

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and the tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Exhibit "A"

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: if you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more that one petition is filed in Tax Court, the first petition will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court can't consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court of the Court of Federal Claims, the partner filing the petition must

deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Brenda Williams

for Kevin Harris,
Technical Services
Territory Manager

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

**FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP**

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

DEPARTMENT OF THE TREASURY - INTERNAL REVENUE SERVICE

| Form 870-PT (08/2004) | Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts | IN REPLY REFER TO: Brenda Williams |
|---|---|---|

| Taxpayer(s) name(s), address and ZIP code: | Name of Partnership: | Tax Year(s) Ended: |
|---|---|---|
| ZIP CAT INVESTMENTS, LLC<br>ATTN: BOB GREISMAN<br>BDO SEIDMAN, LLP 233 N. MICHIGAN AVE<br>CHICAGO, IL. 60601 | SEQUOIA CAPITAL INVESTMENTS LLC<br>Taxpayer Identifying Number:<br>13-4091017 | December 31, 2000 |
| Taxpayer Identifying Number: 36-4332246 | Name of Tax Matters Partner:<br>Sentinel Advisors, LLC | |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement; plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax and additional amounts may be filed or prosecuted.

| Signature of taxpayer | Date Signed |
|---|---|
| Signature of taxpayer | Date Signed |
| By (Signature and title) | Date Signed |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

# INSTRUCTIONS FOR SIGNING FORM 870-PT

1. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

2. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

3. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

4. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

5. If this offer is with respect to the tax liability for the consolidated return year, the agreement should be signed in the name of the common parent of the consolidated group for the consolidated return year. The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the corporation, should be displayed in the signature block.

6. If the Tax Matters Partner signs this offer, please include the title with the signature.

7. If this offer is signed by a Tax Matters Partner that is a subsidiary corporation, then an officer authorized to sign this agreement for the year(s) indicated on the form must sign for the parent corporation. An authorized officer for the subsidiary corporation should also sign if the Tax Matters Partner is binding non-notice partners under the agreement. See Treas. Reg. 1.1502-77(a)(3)(v).

DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

### SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP<br>Sequoia Capital Investments, LLC<br><br>TAXPAYER IDENTIFYING NUMBER: **13-4091017** | TAX YEAR(S) ENDED<br>12/31/2000 | | |
|---|---|---|---|
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | -0- | | |
| OTHER ADJUSTMENTS | | | |
| A. **Outside Bases in Sequoia in Capital Investments, LLC** | | | |
| (1) ADJUSTMENT | (11,261,061) | | |
| (2) AS REPORTED | 11,261,061 | | |
| (3) CORRECTED | 0 | | |
| B. **Beginning Capital Account (SCH. M-2, LINE 1)** | | | |
| (1) ADJUSTMENT | (204,549) | | |
| (2) AS REPORTED | 204,549 | | |
| (3) CORRECTED | 0 | | |

REMARKS

- **Reference Exhibit A attached.**

**Accuracy Penalties under IRC Section 6662 are included as a partnership level determination. See Exhibit A, paragraph 11 for a description of the penalties.**

# Form 870-PT, Other Adjustments (Continued)

Page ____ of ____

| NAME OF PARTNERSHIP<br><br>Sequoia Capital Investments, LLC<br><br>TAXPAYER IDENTIFYING NUMBER 13-4091017 | TAX YEAR(S) ENDED<br>TAX YEAR 12/31/2000 | | |
|---|---|---|---|
| **C. Capital Contributions (SCH. M-2, LINE 2)** | | | |
| (1) ADJUSTMENT | (872) | | |
| (2) AS REPORTED | 872 | | |
| (3) CORRECTED | 0 | | |
| **D. Other Portfolio Income (Loss) (SCH. K, LINE 7)** | | | |
| (1) ADJUSTMENT | 124,794 | | |
| (2) AS REPORTED | (124,794) | | |
| (3) CORRECTED | 0 | | |
| **E. Other Deductions (SCH. K, LINE 11)** | | | |
| (1) ADJUSTMENT | (19,197) | | |
| (2) AS REPORTED | 19,197 | | |
| (3) CORRECTED | 0 | | |
| **F. Distributions of Money (SCH. K, LINE 22)** | | | |
| (1) ADJUSTMENT | (14,348) | | |
| (2) AS REPORTED | 14,348 | | |
| (3) CORRECTED | 0 | | |
| **G. Distributions of Property Other than Money (SCH. K, LINE 23)** | | | |
| (1) ADJUSTMENT | (54,796) | | |
| (2) AS REPORTED | 54,796 | | |
| (3) CORRECTED | 0 | | |
| H. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| I. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

EXHIBIT A – Explanation of Items
Sequoia Capital Investments, LLC
Final Partnership Administrative Adjustment Letter
Tax Year Ended: December 31, 2000 TIN:13-4091017

1. It is determined that neither Sequoia Capital Investments, LLC nor its purported partners have established the existence of Sequoia Capital Investments, LLC as a partnership as a matter of fact.

2. Even if Sequoia Capital Investments, LLC existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners. The formation of Sequoia Capital Investments, LLC, the acquisition of any interest in the purported partnership by the purported partners, the purchase of offsetting options, and the transfer of offsetting options to the partnership in return for a partnership interest, the purchase of EUROs or others assets by the partnership, and the distribution of these assets to the purported partners in complete liquidation of their partnership interests, and the subsequent sale of those assets to generate a loss when sold, all within a period of less than thirteen months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the partnership and the transactions described above shall be disregarded in full and any purported losses resulting from these transactions are not allowable as deductions for federal income tax purposes.

3. It is determined that Sequoia Capital Investments, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in its taxable year ended December 31, 2000 a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:

   a. Sequoia Capital Investments, LLC is disregarded and that all transactions engaged in by the purported partnership are treated as engaged in directly by its purported partners. This includes the determination that the assets purportedly acquired by Sequoia Capital Investments, LLC, including but not limited to foreign currency options, were acquired directly by the purported partners.

   b. the foreign currency options, purportedly contributed to or assumed by Sequoia Capital Investments, LLC, are treated as never having been contributed to or assumed by said partnership and any gains or losses purportedly realized by Sequoia Capital Investments, LLC on the options are treated as having been realized by its partners.

   c. the purported partners of Sequoia Capital Investments, LLC should be treated as not being partners in Sequoia Capital Investments, LLC.

EXHIBIT A – Explanation of Items
Sequoia Capital Investments, LLC
Final Partnership Administrative Adjustment Letter
Tax Year Ended: December 31, 2000 TIN:13-4091017

d. contributions to Sequoia Capital Investments, LLC will be adjusted to reflect clearly the partnership's or purported partners' income.

4. It is determined that the obligations under the short positions (written call options) transferred to Sequoia Capital Investments, LLC constitute liabilities for purposes of Treasury Regulation §1.752-6, the assumption of which by Sequoia Capital Investments, LLC shall reduce the purported partners' bases in Sequoia Capital Investments, LLC in the amounts of $4,950,065, $1,980,028, $990,028, $2,970,074 and $123,748 for Ciola Investments, LLC ; Zip Cat Investments, LLC; David DiMuzio; Deer Lake Trading LLC; and Hava Co., respectively, but not below the fair market value of the purported partnership interests.

5. It is determined that neither Sequoia Capital Investments, LLC nor its purported partners entered into the options positions or purchased the foreign currency or stock with a profit motive for purposes of § 165(c)(2).

6. It is determined that, even if the foreign currency options are treated as having been contributed to Sequoia Capital Investments, LLC, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call options to the same counter-party. Thus, the basis of the contributed options is reduced, both in the hands of the contributing partners and Sequoia Capital Investments, LLC. Consequently, any corresponding claimed increases in the outside basis in Sequoia Capital Investments, LLC resulting from the contributions of the foreign currency options are disallowed.

7. It is determined that the adjusted bases of the long call positions (purchased call options) and other contributions purportedly contributed by the partners to Sequoia Capital Investments, LLC has not been established under I.R.C. § 723. It is consequently determined that the partners of Sequoia Capital Investments, LLC have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

8. It is further determined that, in the case of a sale, exchange, or liquidation of Sequoia Capital Investments, LLC partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for purposes of determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest, or the carryover basis to assets distributed from the partnership to the partners.

EXHIBIT A – Explanation of Items
Sequoia Capital Investments, LLC
Final Partnership Administrative Adjustment Letter
Tax Year Ended: December 31, 2000 TIN:13-4091017

9. The options purportedly transferred to Sequoia Capital Investments, LLC and purportedly entered into by Sequoia Capital Investments, LLC constitute arrangements designed to protect against loss under § 465(b)(4), and neither Sequoia Capital Investments, LLC nor its purported partners have established any amounts considered to be at risk under § 465 that would allow Sequoia Capital Investments, LLC's purported partners to ultimately deduct losses arising from or in connection with Sequoia Capital Investments, LLC.

10. It is further determined that each purchased option claimed to have been contributed to Sequoia Capital Investments, LLC and each written option claimed to have been assumed by Sequoia Capital Investments, LLC (together, an "option pair") are in substance a single integrated financial transaction. Pursuant to §1.988-2(f) of the Income Tax Regulations, each option pair is hereby recharacterized as a single integrated financial transaction to correspond with its substance. Accordingly, any basis of any purported Sequoia Capital Investments, LLC partner in Sequoia Capital Investments, LLC that was derived from an option pair is limited to the net of any premium paid for the purchased option and any premium received for the written option.

11. Accuracy-Related Penalties

It is determined that the adjustments of partnership items of Sequoia Capital Investments, LLC are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations. There has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply. It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Sequoia Capital Investments, LLC. The penalty shall be imposed on the components of underpayment as follows:

A. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.
B. a 20 percent penalty shall be imposed on the portion of the underpayment

EXHIBIT A – Explanation of Items
Sequoia Capital Investments, LLC
Final Partnership Administrative Adjustment Letter
Tax Year Ended: December 31, 2000 TIN:13-4091017

attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), and 6662(c) of the Internal Revenue Code.

C. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.